In the name of the Father, the Son, and the Holy Spirit. Amen. Good morning. May it please the Court. Today the people are arguing that the trial court was incorrect to dismiss the determines against both Ms. Hall and Ms. Fiumetto in these consolidated cases. The trial court was incorrect to determine that Section B of the possession of a hypodermic needle statute was descriptive of the offense itself. And it was incorrect to determine that it was categorically could not be considered drug paraphernalia as to Ms. Hall specifically. Turning first to the hypodermic needle statute. As the Court knows, the standard review in regards to statutory destruction is to ascertain the legislator's intent. And this is usually done by giving the statutes their plain meaning. In this case, though, our Supreme Court reiterated in Tolbert, when an attorney or an act is made criminal, with exceptions embraced in the enacting clause creating the offense so as to descript it of it, people must allege and prove that the defendant is not within the exceptions so as to show that the precise crime has been committed. In other words, where the exception is descriptive of the offense, it must be negated in order to charge the defendant for the offense. On the other hand, where the exception is said to be part of the description of the offense and where it withdraws certain acts or certain persons from the operation of the statute, it need not be negative and is possessing the act whether the same section or another party act is of no consequence. It's the people's argument that Section B is an exception that does not need to be negative in the charging instrument. So how would it come up? If it doesn't have to be in the charging instrument, how would it get before the Court? It would be a defense on behalf of the defendant to bring forth. Okay. So Section B states that a person who is at least 18 years of age may purchase from a pharmacy up to 20 and have the possession of up to 20 hybrid needles or syringes. So the defense will defend it to state that I am 18 years of age, I have purchased these from a pharmacy, so I'm allowed to have these number of needles among those less than 20. If it's more than 20, then it must fall among the other exceptions that's listed in Section A of the statute. There's no question here. We don't have a physician. We don't have any of the other exceptions that might be applicable here. Not according to the record. The trial court didn't want to hear anything related to evidence, only legal arguments at the time. All right. But when the – sorry. The reason being that Section B is an exception like the other exceptions in Section A is that the purpose of its inclusion in the statute was not to change the meaning of possession of hybrid needle, but just to give more individuals a chance to not be a part of – to no longer be considered in violation of the law, as the purpose of it was to help against the HIV and AIDS epidemic, as according to Senator Trotter when discussing the inclusion of this amendment. So this was strictly a motion, there were no facts really taking, just legal motions in this case? Correct. Okay. And this occurred in both Hall and Fiumetto. This legal argument at the trial court occurred for both Hall and Fiumetto, just legal arguments, as to whether or not Section B was an exception or was a descriptor of the offense. Do you want to address People v. Brace? People v. Brace? Yes. This is a Fourth District case where the defendant, I think, had argued a similar argument that was made in this case, that the State had to prove that she didn't have a prescription and didn't do so. Does not. I'm sorry, what did you say? I'm sorry, I didn't mean to call that case. You quoted language actually from People v. Tolbert, which is a Supreme Court case. But Brace is a fairly recent 2017 Fourth District case where she was charged with possession of methamphetamine precursors without having a prescription. And her argument was, well, then the State has to prove that I don't have a prescription. That case, unfortunately, the People don't recall that case at the time. So I'll be unable to actually recount. Well, assuming that the court in that case decided that, the appellate court decided that it was actually an exception and therefore a matter of defense, that would probably support your position, correct? Yes, it would. Moving on to the drug paraphernalia statute, the Drug Paraphernalia Act. For that decision, the trial court determined that a spoon categorically could never be considered drug paraphernalia. And the people believe that's incorrect according to the statute. The reason that the court gave was that due to the historical nature of spoons, that they're harmless use, that it shouldn't be considered drug paraphernalia according to the principles listed in the statute within the Act itself. However, the people's position is that the Act demonstrates that a spoon could be considered drug paraphernalia. Well, it could be, and it may, maybe it was in this case if it ever goes to trial. But the question is, what is its common use? What is it more likely used for? And wouldn't that be more of a consideration that, you know, up front in this particular case? Well, common use is just one of many factors for determining whether or not I'd consider drug paraphernalia. It's not just only one. And while common use is for harmless things, there is also a common usage of spoons and the use of ingesting drugs or cooking drugs or some of these high-consuming drugs. So a plastic spoon that melts when you cook a drug would be hackerband or paraphernalia? A plastic spoon that melted? At that point, probably part of the drug itself. Well, it would be a rather low-grade, poorly chosen paraphernalia, piece of paraphernalia. But according to your argument, it's still paraphernalia, isn't it, because it's a spoon? So if it was recovered and used for the ingestion, cooking, biting, creation of contraband or marijuana, then, yes, it would be considered drug paraphernalia. It's not just a spoon sitting by itself on a table. It's a spoon used for the illegal ingestion of drugs. That's what makes it drug paraphernalia. Well, where was this spoon allegedly found? I believe in the record it states that the spoon on Ms. Hall was found in her purse next to three needles. But, like I said, the judge didn't want to hear any actual evidence on legal grounds. Was there any drug residue on it? There was mention that residue was found, but the record doesn't state what the residue was precisely. All we know is that Ms. Hall did have a blood test and did indicate that there was opiates and cocaine in her system. I mean, did they test the spoon to see if the spoon was tainted? That was not introduced in the record. Unfortunately, it was just stated that there was residue seen on the spoon itself. And, unfortunately, the court didn't want to hear what that residue was. Well, the most common spoon situation that comes to mind for me is a mother carrying her diaper bag and she has a spoon to feed her child out of baby food jars. Is that drug paraphernalia? No, because the mother is having a spoon on her. She's not using it for drugs. It's just having a spoon. But you're saying the mere fact that this spoon is in her purse or diaper bag, in her purse, next to some syringes, and we're still not sure what the nature of those syringes are because we don't have any facts, hypodermic needles means it's drug paraphernalia. And it means that the drug paraphernalia can be charged. This doesn't – I'm not saying that a spoon should automatically be considered drug paraphernalia and someone should be found guilty of it. This is only arguing as to whether the state can bring charges for drug paraphernalia. Well, what did your actual charge say, or the actual, not yours, because you weren't the one who was standing in the courtroom, I assume? I don't know the exact wording, but for count two as to call, I believe it was stated along the lines that the defendant was in violation of the Possession of Drug Paraphernalia Act for – Possession of Drug Paraphernalia Act for having – for the spoon. But I don't know the exact language of the charge. Unfortunately, it's in the record itself. But maybe if it were charged differently. I mean, the court found it's a spoon. Yeah. It's a spoon. It can be used for a lot of purposes, and it's most commonly used for purposes to eat. Yes. Not use it for drugs. So does that indicate that there has to be more in the complaint or more in the indictment or more in the statutory authority? What does that mean? Well, for that – well, it's for statutory authority, but the Act does give list examples of items that have been considered drug paraphernalia in the past, and one of the examples is a measured cocaine spoon. But I believe in my brief I mentioned how, within the federal government, they do list spoons as being items that can be considered drug paraphernalia as well. So within statutory authority, there is authority within the statute that already indicates that spoons are drug paraphernalia – can be considered drug paraphernalia. I'm sorry, what was the other part of your question? Well, how – if it's – if the judge says or we find that it isn't drug paraphernalia, does that mean it's never drug paraphernalia or could it be pled as drug paraphernalia by facts pled in the complaint or indictment? Well, how the trial court ruled is it seems that the trial court ruled that categorically a spoon can never be considered drug paraphernalia. And such a ruling just removes pretty much a list of items that the state can never charge as drug paraphernalia. The language of the statute is – I'm leaving out a few words, but generally it's that drug paraphernalia means all equipment, products, and materials of any kind which are intended to be used unlawfully in whether it's manufacturing, possession, or whatever it is. Did the charging document here show or describe the manner in which it was intended to be used? Unfortunately, I cannot speak to what the charging document says at this point in time. I know it's in the record, but I don't know the exact language that was used within the charging document. But since you're asking whether or not if stating within the charging document whether – like stating how this spoon was used –  I believe that would assist the state in having a proper charge for the – having a proper charge in order to not have a dismissal. I think the judge says the general, usual, customary, historical use to which the item involved has been put, that's the spoon. And again, we're talking about a spoon, not a spoon that's been bent or curled or has a hidden compartment or has been modified at all, just a spoon. Do you take that language – I don't take that language to mean categorically never drug paraphernalia. I think she was talking about ways that it might be drug paraphernalia, and to me that means should it be pled in some way to indicate that the state intends to prove it as that. And that's my only question here. Well, how the state saw that language was more so that it seemed that the court was looking for like some type of specially modified spoon as opposed to just a standard spoon that you would use to cook with. But as to whether or not the people – whether the state should put that within the pleadings itself. The term intended to be used suggests that probably one of two alternatives. Either a consumer of drugs was intending to use the spoon in order to ingest drugs, or the spoon has a level of consciousness of its own. And I don't think it's the latter. So it's probably the former. And I just want to make sure that I understand that you're not aware of whether or not the complaint mentioned anything about whether or not the user intended to use the spoon. To use this utensil as drug paraphernalia. As to what the complaints say, unfortunately I cannot say what the actual language of the complaint was. But yes, it should be intended to be used as what is the intent of the person who has the item and how it was used, their intent for the use. Is there any more questions? The people thank you and ask that you reverse the trial court's decision to both cases. Thank you. You'll have an opportunity to make rebuttal. Thank you. Mr. Kirkham? May it please the court and counsel, good morning, your honors. Good morning. The court properly dismissed the information in this case of both the syringe charge and the possession of drug paraphernalia charges. So I just want to be clear. I hate when cases or when statutes are in negatives and all of these things. The position at the trial court was of the defense counsel. This is something the state should have to prove. It is not a defense. That is the ruling of the trial court as to that subsection B that talks about 18 years old in possession of up to 20. And the trial court found that based upon obviously the argument in the law presented by the defense. Yes, it was decided on the pretrial motions and arguments presented to the court just on those motions. And what about that brace case? I also am not well versed on that, but I would observe that in determining whether or not something is a descriptive element that must be pleaded and proved by the state or whether it's an affirmative defense. We've got to look to the specific statute that's being interpreted here. We are talking about a different statute. It may be worded similarly such that they're so parallel that that's persuasive authority. However, I think for our purposes we have to look at the Hypodermic and Syringe Act and determine whether that specific statute, 635-1, sets forth a descriptive element or not. And it's the position of the defendants that yes, indeed, it does describe a descriptive element of the offense. Subsection B was added in 2003, and at the time they added subsection B, they referenced that back up into the definition of the offense in subsection A, which says, begins with, except as provided in subsection B, no person, a long list of exceptions for physicians and other people with good cause to have syringes, then says may not possess. So by the structure of the statute, 635-1, it's no longer merely an exception. It is incorporated into the definition of the offense such that it must be pleaded by the state and proved by the state. Didn't you use the word except as provided? Didn't you say that? Did I say that? I thought you just did. Except as provided in subsection B, which is the, and then. Isn't except the root of exception? But then, let me, but they go immediately from that into the list of exceptions. So it has to be treated separately as one of the exceptions that existed prior to 2003. Otherwise, they merely would have added one more category of exception to the long list of exceptions that already exist. By setting it in a separate subsection B, referencing it separately in subsection A, they have made it an element of the offense. And, you know, we can look to one of the canons or tools of statutory interpretation as to consider what the problem is. You said it made it an element of the offense. Did you really mean that, or did you mean? It's a descriptive. Did you mean to say that it made it an additional offense? Or it made it an offense? Well, and there's a problem. An element in relation to an offense is a bullet point. It's either one, two, three, or four. And each of these little bullets have to be proven in order to prove the crime. You said that it became an element. Now, is it an element, or is it an additional crime? It's a descriptive element, as Tolbert defines it, which makes it an element that must be pled. I don't know exactly what you mean when you say an additional crime. You know, we set forth one offense here, and I'm confused as to whether you're saying we now have two separate offenses defined in subsection A. I think that the proper way to read this statute, 635-1, is to consider the evil or the problem that existed that the legislature intended to remedy. And according to the press of the Cleveland Street case, they cited Senator Trotter's description of the purpose behind this amendment to the State Senate in its brief, and that is to address the problem of a public health problem of transmission of HIV hepatitis and so forth. The intent was to decriminalize, excuse me, the purpose was to decriminalize possession of syringes. By simply adding one more exception, making this over-18 possession less than 20, simply another exception, certainly frustrates the purpose of decriminalization. The State, at the motion to reconsider in this case, amended the information down to just simply possess a syringe. So it certainly seems to frustrate the purpose to say, okay, now all we have to do to charge someone with possession of a syringe under this statute is to say just that. You possess a syringe. Everything else, all burdens of disproving of everything else is on the defendant, even though the purpose of the statute is to decriminalize possession of needles in small amounts for personal use. It simply doesn't make sense when considered of what the legislature was trying to do here. You know, if you look at the case of PRESA out of the 3rd District, which considered the statute post-amendment. PRESA, P-R-E-S-A. And I put that in the argument of my brief. They say that any person 18 or over may possess up to 20 needles. And if you don't fall inside one of those categories or factors, then you go to the exceptions. And in that case, the defendant had 500 needles, but was found to fall within the exception of participating in scientific research as a member of the Chicago Recovery Alliance. So that's the proper way to look at this. You know, a proper charging instrument, after the 2003 amendments, would require that states say possession of a needle while under the age of 18 or possess more than at that time of the time of these cases. 20 of the legislature has since increased the number of syringes a person may possess to 100. So a person charged today would have to be under 18, possess more than 100 needles, and doesn't fall within one of the exceptions. It sounds like that your argument relating to decriminalization would seem to only apply to people over the age of 18. It would seem that the legislature would still wish to criminalize possession by people under the age of 18. And I would not disagree with that. And I have no explanation why the legislature would have made that particular policy decision in drafting this. All we know is the language that they used in the statements of Senator Trotter of the goal of decriminalization to improve the public health, as a public health initiative. Well, if the person was under the age of 18 in this situation, the odds are might not be in adult court. It could be 17, but the odds are it wouldn't be in an adult court and subject to this particular consideration. Maybe that's the reason, although it's missed the mark maybe by a year. Yeah. And, you know, as Presser noted, you know, this is the policy set forth by the legislature, and we have to live with whatever language that came up, whatever their policy decision was. Does lenity fit in anywhere here? I think certainly my understanding of the proper place of lenity in the process of working through statutory interpretation is, first, you start with the plain language of the statute. If the meaning can be resolved through the clear and plain language of the statute, then you move on to other kinds of interpretation. You can look at legislative intent, and lenity kind of comes toward the end there. If you can't figure out what the legislature meant or what the intent of the legislature was, at the end you come to lenity, which, you know, I would certainly like to say we start there and interpret this in the way most favorable to the defense, but I don't think that would be a correct statement to the court. I think that we resolve this issue by looking at the language, the structure of 635-1, the way they added subsection B, incorporated it back into A, and how that fulfills the legislative purpose of decriminalization of small numbers of syringes in the interest of public health and to get a handle on transmission of hepatitis and HIV. It certainly frustrates that purpose. I know I've said this before here today, but it certainly frustrates the purpose of these amendments to simply say you possess a needle now, you have to disprove or you have to approve, you fall within the exceptions. I'm happy to answer any more questions on syringes. Just one last, and I'm still trying to wrap my head around it. Your basic premise here, though, is because they created this section B, rather than incorporating it into a rather long list in A, so we wouldn't have a B, it would just be 635-1. That's the best evidence you think that that's why it should be part of what the state must prove, as opposed to an actual exception or defense? Well, I certainly think we have to consider that. I think that you have to read B with this, the except is provided in subsection B, which they inserted into the very beginning of subsection A, and then they go into the other exceptions. And that structure indicates that they're separate. I think that when we're trying to parse a statute like this and figure out what did the legislature mean, I think that it's fair to come to that conclusion, to say that the legislature, being in the business of drafting statutes, could have simply, as you suggest, just left it 635-1. What you're saying is that if this was supposed to be an exception, which was supposed to be a defense, it should have been listed seriatim with all the others? I think that's a fair way to look at the statute, yes, Your Honor. And since it wasn't, then we shouldn't interpret it as such. I think then we look to the rule of the Supreme Court expressed in Tolbert and find it to be a descriptive element which must be plotted and proved by the State. All right, now the spoon. Now the spoon. Again, we go to the statutes. First, I'd like to – I did, by chance, bring the information to court with me, so I'm able to tell you what the State alleged. I know that was an issue. It says, in violation of 600-3.5a, it said defendant knowingly possessed a spoon, an item of drug paraphernalia, with the intent to use that spoon in preparing a controlled substance to be ingested, inhaled, or otherwise introduced into a human body, which tracks the criminalization portion of the Paraphernalia Control Act. So if you look at 635 – excuse me, 600-3.5, it says a person who knowingly possesses an item of drug paraphernalia with the intent to use it. So we have – it has to be an item of drug paraphernalia. Separately, the defendant has to have the intent to use that item of drug paraphernalia. So what is an item of drug paraphernalia? We go to the definition section, 600-2d, which is all equipment, products, materials of any kind other than manufacturing materials and so forth. And this has been – you have to separate the intent. It's the product, the spoon in this case, has to have been intended to be used as an item of drug paraphernalia, independent of the intent of the person who would have used it. The purpose of this drug paraphernalia definition and criminalization is to stop the manufacture of materials that are dedicated for drug paraphernalia or for drug use. And, you know, I know that that's the intent of the legislature because they told us that in Section 6. My time's expired. Let me briefly conclude. It says, This Act is to be used solely for the suppression of commercial traffic in or possession of items that, within the context of a sale or offering for sale or possession or clearly and beyond a reasonable doubt, intended for the illegal use of cannabis and controlled substance. So we look to the nature of the object and whether that object was intended to be used as drug paraphernalia. Well, this case sort of, this issue brings to mind, for me, the Supreme Court's recent decision about a gun within 1,000 feet of a park. I mean, it can be absolutely innocent. You get out of your car and that's the only parking spot that was there and you have a legal carry. Well, if you're a mom and you've got a spoon in your purse because your child likes to eat, are you being put in danger because there's a spoon there? Or is it important that this spoon, in this case, as possibly contemplated by the record, is next to three hypodermic needles? See, I think that goes, if you look at 3.5, that goes to the intent of the defendant or the ultimate user, not to the definition of is this drug paraphernalia. And I think before we get to the intent to use, because it's found possibly in conjunction with which, I don't know whether we can want to be considering that given the procedural nature of the motion to dismiss. I mean, that was fact-finding and went beyond the pleadings. So you're saying that the words that are used in the statute in subsection D, drug paraphernalia means materials, let's just use that word, which are intended to be used unlawfully, and then it goes on. So you're saying that that is different than the intent of the defendant, the individualized intent of the defendant. Yes, I do. And I get that from the structure of what you read in Section 2 in conjunction with the criminalization of Section 3.5, a person who normally possesses an item of drug paraphernalia, with the intent to use it. So it has to be drug paraphernalia, which is defined in 2 and which is limited to those items which, by its nature or design, are intended to be used for drug consumption and which would exclude pouring half a soda can in tin foil, which were dismissed in this case also and are not challenged on appeal, common household spoons. So who is it intended to be used by unlawfully then? Are you saying it's the manufacturer who intends that it be used unlawfully? Yes. Okay. People still are, as I, you know, you could probably, in states such as Colorado and so forth where marijuana is legalized, there's manufacturers of bongs and marijuana pipes and so forth. And the legislature so far in Illinois has determined that those can't be sold here. There are items that are manufactured for drug use, and those are illegal in Illinois. It would be nice if it said not just miniature cocaine spoon, but on the stem say cocaine spoon. That would be easy. Not intended to be used. Not intended to be used as a cocaine spoon. I know my time's up and I'm running along, but a blatant McDonald's stopped using the word coffee stirrer spoons for the exact reason. So, you know, this is a problem that's been around and an issue that's been around for a long time. So in conclusion, I would ask this Court to confirm the judgments of the Lake County Circuit Court dismissing the information in this case. Thank you. Thank you. Mr. Taylor. Your Honor, just four quick points on rebuttal. The first, to go to your question as to the location of Section B, would that be determinate whether it's an exception or descriptively offense? Well, if you go to Tolbert, it says very clearly that the location of exception does not matter in determining whether, does not matter in the determination. The exception can be within the same section, a different part of the statute, a different part of the act. As long as it's an exception, that's the important aspect of it. But somebody has to decide that it's an exception, and that would be our, or the trial court or our job at this point. That's correct, yes. The second point, as to the case of Pressa from the 3rd District, while they do talk about Section B, they don't go into any real depth, as that case was involving whether that defendant fell under the scientific research exception of Section A. So they do mention Section B, but they don't go into real analysis of it in any respect. Moving on to the spoon, the defendant argues that how the intent goes for an item, the intent is for the item itself, like the manufacturer's intent. However, that was the old statute, not the current version. The reason that the District Legislature updated the statute for drug paraphernalia was they, since it was only targeting an item that was manufactured for the use of drug consumption, cooking, what have you, it missed multiple other items that have been used for drug paraphernalia, have been used for drug cooking, manufacturing, ingestion, but since those items were not intended to be used in that way, they were not covered by the statute. That is why the statute was changed to its current state, to cover more items for the illegal use of drug consumption. That's what makes it drug paraphernalia. Finally, I just want to compare this case with the case that will be carried outside by this Court in 2011. In that case, the reason the Court decided that cigar papers were not drug paraphernalia was because not only was it much clearer in stating that items that had historically been used for tobacco products are not considered drug paraphernalia and lists multiple items, which includes cigarette papers. That is the reason behind why cigar papers cannot be drug paraphernalia. The legislature was clear that it should not be considered. While the statute does list factors to consider for other items, the legislature was clear in listing mentioned cocaine spills as an item that has been historically considered drug paraphernalia. And with that context, to say that's true in this case is not drug paraphernalia, goes against the legislature's intent in the statute. All right, well, the legislative intent is listed at Section 600-6, and it says, This Act is intended to be used solely for the suppression of the commercial trafficking or possession of items that, within the context of sale or offering for sale or possession, which would be the issue here, are clearly and beyond a reasonable doubt intended for the illegal and unlawful use of cannabis or a controlled substance. To this end, all reasonable and common-sense inferences shall be drawn in favor of the legitimacy of any transaction or item. How does that not fit a spoon? The reason that doesn't fit a spoon is because while there might be common-sense inference for the legitimacy of a spoon, that also cuts the other way. The common-sense inference that spoons have been used for the ingestion of drugs and the cooking of drugs. Do we have any questions? Thank you for your time. Thank you. There are other cases in the call that we have a short recess to take care of.